# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * * * *
CHRISTOPHER DEMORE, *
*
Petitioner, * No. 20-1265V
* Special Master Christian J. Moran
v. *
* Filed: October 13, 2026
SECRETARY OF HEALTH *
AND HUMAN SERVICES, *
*
Respondent. *
* * * * * * * * * * * * * * * * * * * * * * *

Leah V. Durant, Law Offices of Leah V. Durant, Washington, DC, for petitioner;
Julianna Rose Kober, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

Christopher Demore alleged that an influenza ("flu") vaccine caused him to suffer a neurologic condition, myasthenia gravis. He did not receive compensation. Entitlement Decision, issued Sep. 26, 2024, 2024 WL 4542934. Mr. Demore challenged this decision, but his motion for review was denied. Opinion and Order, issued Feb. 26, 2025, 175 Fed. Cl. 756.

Mr. Demore now seeks an award of his reasonable attorneys' fees and costs. The Secretary has challenged one specific aspect—the filing of the motion for review.

For the reasons explained below, Mr. Demore had a sound, if unpersuasive, ground for filing the motion for review. Thus, Mr. Demore will be compensated for the activities associated with the motion for review. However, other activities were not reasonable. Thus, Mr. Demore is awarded $106,836.12.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

# I. Procedural History

## A. Before the Petition was Filed

Mr. Demore first consulted Leah Durant, who became his counsel of record, on May 14, 2019. Over the next approximately 16 months, paralegals at Ms. Durant's law firm collected medical records from various providers.

## B. Proceedings at the Office of Special Masters

On behalf of Mr. Demore, Ms. Durant initiated the case by filing the petition on September 24, 2020. After the case was assigned to the undersigned, an order regarding attorneys' fees was issued on Dec. 2, 2020. Ms. Durant read this order. Entry, dated Dec. 2, 2020. However, attorneys often did not comply with attorneys' fees order. For example, to avoid block-billing, attorneys were instructed to define further tasks taking longer than one hour. Attorneys' Fees Order, issued Dec. 2, 2020, at 4. But, attorneys regularly created time entries exceeding one hour.

In any event, the litigation proceeded with Mr. Demore filing medical records. The Secretary advised that compensation should not be awarded. Resp't's Rep., filed Mar. 3, 2021.

The parties submitted a series of reports from their experts. At the beginning of this process, Ms. Durant's office retained the services of the Expert Institute to assist in searching for experts. Eventually, Mr. Demore retained two people: David Simpson, a neurologist, and Ronald A. Simon, an immunologist. An attorney in Ms. Durant's law firm, Michael Milmoe, spent approximately 12 hours assisting in the preparation of their first reports and Ms. Durant spent approximately 3 more hours.

When Dr. Simpson and Dr. Simon responded to reports from the experts whom the Secretary retained, Mr. Milmoe devoted approximately 10 hours to assisting the experts.

The next step was for the parties to argue their cases. Order, issued June 29, 2023 (setting the deadline for petitioner's brief as August 11, 2023). The attorneys' timesheets do not reflect any substantive work on the entitlement brief until November 7, 2023, when an associate attorney began to review and to evaluate evidence in the context of drafting a brief. This associate attorney spent five hours on the task and another 6.5 hours on the brief on December 8, 2023, about one month later. Because Mr. Demore had been warned in an order issued on November 13, 2023 that enlargements of time should not be expected, a third motion for an enlargement of time was denied. Order, issued Dec. 13, 2023. Mr. Milmoe spent 6.5 hours on a motion for reconsideration, which was granted. Mr. Milmoe then spent an additional 5.5 hours improving the associate's draft brief. It was filed on January 3, 2024.

A different associate attorney and Mr. Milmoe spent approximately 10 hours in drafting a reply, which was filed on April 17, 2024. After the reply brief was submitted, paralegals gathered more medical records.

Mr. Demore was found not entitled to compensation. The primary flaw in his claim was that he did not establish a persuasive medical theory to explain how the flu vaccine can cause myasthenia gravis.

### C. Motion for Review

Mr. Demore sought to overturn the Entitlement Decision by filing a motion for review. Mr. Milmoe spent approximately 14 hours drafting the motion for review. The primary (but not exclusive) argument was that the Entitlement Decision imposed too high a standard by requiring the medical theory to be persuasive, rather than plausible.

The Court denied the motion for review. 175 Fed. Cl. 756. With respect to the persuasive vs. plausible argument, the Court used strong language, stating that Mr. Demore's arguments were "an obfuscation and near misrepresentation of the law." Id. at 761.

Following the entry of judgment against Mr. Demore, Ms. Durant and Mr. Milmoe considered appealing but Mr. Demore did not. A paralegal issued documents to close the case.

### D. Attorneys' Fees and Costs

Mr. Demore requested an award of attorneys' fees and costs—$105,623.00 for attorneys' fees and $32,599.62 for litigation costs. Pet'r's Fee Mot., filed Aug. 26, 2025. However, after various issues with costs were discussed, Mr. Demore reduced the amount sought for costs to $29,799.62. Pet'r's Status Rep., filed Sep. 30, 2026. Thus, the total amount requested is $135,422.62.

The Secretary's response was more detailed than typically received. As to the question of whether Mr. Demore was eligible for any award of attorneys' fees and costs, the Secretary deferred to the undersigned's assessment generally. Resp't's Resp., filed Sep. 9, 2025, at 4. But, on the more specific issue of the motion for review, the Secretary argued that reasonable basis did not support the motion for review. Id. at 3-4. Finally, as to the amount of attorneys' fees and costs, the Secretary again generally deferred to the undersigned. But, the Secretary opposed compensation for time spent collecting medical records after Mr. Demore filed his reply on May 13, 2024. Id. at 6-7.

Mr. Demore defended his request for attorneys' fees. While he acknowledged the Court's rejection of his argument regarding plausibility, Mr. Demore argued that his motion for review was reasonable because a different judge at the Court of Federal Claims has agreed. Pet'r's Resp., filed Oct. 10, 2025, at 7-8, citing J. v. Sec'y of Health & Human Servs., 155 Fed. Cl. 20 (2021) and Hoffman v. Sec'y of Health & Human Servs., 172 Fed. Cl. 477 (2024).

With the submission of the reply, the matter is ready for adjudication.

## II. Part One: Eligibility for Attorneys' Fees and Costs

Petitioners who have not been awarded compensation (like Mr. Demore here) are eligible for an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1). As the Federal

Circuit has stated, "good faith" and "reasonable basis" are two separate elements that must be met for a petitioner to be eligible for attorneys' fees and costs. Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632, 635 (Fed. Cir. 2017).

Here, there is little, if any, dispute that Mr. Demore's claim satisfied the reasonable basis standard through the Entitlement Decision. Mr. Demore supported his claim with reports from Dr. Simpson and Dr. Simon. They are sufficient to clear the reasonable basis hurdle.

Instead, the parties disagree whether reasonable basis supports the motion for review. The standards for assessing whether reasonable basis supports a motion for review or appeal to the Federal Circuit are not entirely clear. Recent Federal Circuit precedents regarding reasonable basis have addressed whether a claim was supported by reasonable basis before a special master. Thus, these Federal Circuit cases have looked to the evidence before the special master. See, e.g., Cottingham v. Sec'y of Health & Human Servs., 971 F.3d 1337, 1356 (Fed. Cir. 2020). Whether the same "scintilla" of the evidence should be the standard by which motions for review or appeals should be measured has not been decided by the Federal Circuit.

The closest Federal Circuit opinion, R.K. v. Sec'y of Health & Human Servs., 760 Fed. App'x 1010 (Fed. Cir. 2019), is not particularly helpful because the circumstances differed greatly. As a preliminary point, R.K., itself is not an opinion that establishes binding precedent. In any event, in the underlying decision regarding attorneys' fees and costs, the special master denied attorneys' fees for an unsuccessful appeal to the Federal Circuit because petitioners were not likely to prevail upon either of two issues—a constitutional challenge to the Vaccine Program and an attempt to overturn various fact findings. Notably, it appears that the special master did award attorneys' fees for the motion for review on the same topics. Id. at *1012.

On appeal of the denial of the attorneys' fees for the Federal Circuit appeal, the Federal Circuit affirmed. The constitutional challenge lacked reasonable basis because the Federal Circuit had addressed that exact issue in a precedential opinion issued seven days before the initial brief by R.K. The appeal of the fact-finding also lacked reasonable basis in light of the highly deferential standard of review. Even then, the Federal Circuit advised that "We do not hold that all appeals to this court challenging a special master's factual findings lack a reasonable basis."

Mr. Demore's case is not the same in several respects. First, Mr. Demore filed a motion for review and R.K. affirmed a denial of attorneys' fees for an appeal. The first appellate proceeding probably should have a lower threshold. Second, Mr. Demore's primary argument in the motion for review raised a question of law, the standard by which special masters should evaluate causal theories proposing to connect vaccinations and injuries. Because of the different standards of review (de novo versus arbitrary and capricious), Mr. Demore could have succeeded on this argument in the motion for review.

The Secretary's argument that "Petitioner had no reasonable basis to believe the arguments set forth in his Motion for Review would prevail at the Court of Federal Claims" (Resp't's Resp. at 4) overlooks success other petitioners enjoyed in arguing for a plausibility standard in J. and Hoffman. Given that the Entitlement Decision evaluated Mr. Demore's prong one evidence under a persuasiveness standard, the undersigned also thinks that Mr. Demore's

argument in the motion for review was wrong. On the other hand, the undersigned recognizes that had the case been randomly assigned to the judge who decided J. and Hoffman, the outcome could have been different. Thus, the undersigned finds that Mr. Demore's motion for review had a reasonable basis.[2]

For these reasons, reasonable basis supported Mr. Demore's case throughout its duration. Although special masters retain discretion not to award attorneys' fees and costs after finding reasonable basis, James Cornelius v. Sec'y of Health and Human Servs., 984 F.3d 1374, 1379 (Fed. Cir. 2021), this case is not exceptional. Thus, Mr. Demore will be awarded a reasonable amount of attorneys' fees and costs.

## III. Part Two: Reasonable Amount of Attorneys' Fees and Costs

### A. Standards for Adjudication

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach. Avera, 515 F.3d at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." Hines v. Sec'y of Health & Human Servs., 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgement to reduce the number of hours billed to a level they find reasonable for the work performed. Saxton ex rel. v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Petitioners "bear[] the burden of establishing the hours expended, the rates charged, and the expenses incurred." Wasson v. Sec'y of Health & Human Servs., 24 Cl.Ct. 482, 484 (1991), aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Adequate proof of the claimed fees and costs should be presented when the motion is filed. Id. at 484 n.1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

[2] The undersigned also recognizes that the chief judge who decided Mr. Demore's motion for review might think the motion for review lacked reasonable basis. The Secretary can obtain the opinion of the chief judge on this issue by filing a motion for review of the present decision. See Fields for Estate of Lawrence v. Sec'y of Health & Human Servs., No. 17-1056V, 2022 WL 4100173, at *2 (Fed. Cl. Aug. 23, 2022) (denying motion for review of decision reducing attorneys' fees and costs and denying attorneys' fees incurred in preparing the motion for review).

**B. Attorneys' Fees**

The two components that factor into a reasonable amount of attorneys' fees are a reasonable hourly rate and a reasonable number of hours. With respect to the former topic, a reasonable hourly rate, Mr. Demore proposes various rates for Ms. Durant, Mr. Milmoe, associate attorneys, and paralegals. These rates are credited.[3]

However, for the number of hours, the billings are excessive and/or unreasonable in several respects.

1. Attorney Reviewing Medical Records

When an attorney does the work of a paralegal or administrative assistant, he or she should be paid a rate commensurate with the nature of the work. See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties."). One example of a task that paralegals competently perform is summarizing medical records. See Broussard v. Sec'y of Health & Human Servs., No. 18-302V, 2025 WL 2733619, at *3 (Fed. Cl. Spec. Mstr. Sep. 3, 2025) (noting the law firm's paralegals reviewed medical records); see also Fields for Estate of Lawrence v. Sec'y of Health & Human Servs., No. 17-1056V, 2022 WL 3569300, at *4 (Fed. Cl. Spec. Mstr. July 27, 2022) (reducing attorney's fees by approximately $17,000 because an attorney, not a paralegal, summarized medical records), mot. for rev. denied, 2022 WL 4100173 (Fed. Cl. Aug. 23, 2022). A paralegal in Ms. Durant's firm sometimes reviewed medical records and these paralegal activities are reasonable. See, e.g., entries for Aug. 16, 2020; Sep. 4, 2020; Oct. 1, 2020; Jan. 26, 2021.

Here, Ms. Durant also reviewed medical records before a paralegal summarized them. Entries for July 10, 2018; July 22, 2019; Dec. 8, 2019; Feb. 10, 2020; Mar. 20, 2020; Oct. 2, 2020. It would have been more reasonable for a paralegal to review and to summarize the medical records. Thus, there is a reduction in the charges of $3,200.00.

2. Clerical Activities

Under various fee-shifting regimes, attorneys may charge for tasks performed by paralegals. The justification is that the paralegal is stepping in for an attorney and charging a lower hourly rate for work an attorney would otherwise perform. However, attorneys may not charge for clerical tasks because the attorney's hourly rate reflects overhead expenses, such as employing a secretary. Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of

[3] There is some hesitation in crediting the hourly rate proposed for the associate attorney who created the first draft of Mr. Demore's entitlement brief. According to Mr. Milmoe, "certain key elements of the Special Master's detailed Order for Submissions in Advance of Potential Adjudication had not been properly addressed." Pet'r's Mot. for Reconsideration, filed Dec. 14, 2023, at 2. Thus, it is not readily apparent that the proposed hourly rate fits this associate attorney in this case. But, because the amount of time spent by the associate attorney is relatively small, any potential overcharging can be overlooked. See Vaccine Rule 13(a)(3).

Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

Here, various clerical tasks were charged at paralegal rates. See, e.g. entries for Oct. 5, 2020 (twice); Feb. 1, 2021; Apr. 21, 2021; Oct. 20, 2021; Nov. 9, 2023; Jan. 3, 2024 (twice); Jan. 4, 2024. This results in a deduction of $500.00.

3. Vague and/or Excessive Activities

To facilitate the process of evaluating the reasonableness of an attorney's activities, in November 2004, the Office of Special Masters issued revised Guidelines for attorneys. The Guidelines currently state, "counsel must present contemporaneous records of actual time spent on a case, by whom, their status and usual billing rates, as well as a breakdown of expenses." Office of Special Masters, Guidelines for Practice under the National Vaccine Injury Compensation Program (Rev. Mar. 2025) at § X.

Here, numerous activities are described vaguely. One recurring example concerns communications with the client. One example is the entry for May 22, 2020 ("Telephone conference with client. Obtain and review medical evidence. Coordinate with [Ms. Durant]. Update client file.). Another example is from June 17, 2020 ("Client call. Respond to questions. Provide details re: forthcoming litigation"). Without some information about the nature of these communications, assessing the reasonableness of the associated charges is difficult.

The fact that these activities are for client communications does not matter. "[A]dequately identif[ing] the purpose of the activities" does "not in most cases invade the attorney-client privilege when applied to client communications." Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011). The December 2, 2020 order regarding attorneys' fees pointed out this issue.

Moreover, many of these communications with the client are charged at exactly 0.5 hours. This repetition leads to questions about whether the entry is a boilerplate entry, which does not correspond to how much time was spent.

Another type of entry which is either vague, or excessive, or both vague and excessive is the set of entries for collecting medical records. For some entries, the paralegal did not identify to whom the request was made. See, e.g., entry for Oct. 6, 2020 ("Coordinate with treating providers. Review and discuss status of medical records") for 0.60 hours. This entry contrasts with an entry made just one day before. Entry for Oct. 5, 2020 ("Coordinate with treating providers Fast Med Urgent Care, North Carolina Center for Dermatology, Flexogenix North Carolina PC); draft and issue correspondence; request medical documentation") for 0.80 hours.

In the undersigned's experience, paralegals can request medical records in roughly ten minutes per provider. See entry for July 28, 2020 ("Communicate with records processor (RecordTrak); draft and issue supporting documents; request medical evidence (Duke University Health)") for 0.20 hours; entry for Mar. 19, 2024 (charging 1.5 hours for requesting records from eight medical providers). But, paralegals sometimes exceeded this amount of time. E.g. Entry for Feb. 4, 2021 ("Conference with treating provider (Duke Neuroscience Center); draft and issue correspondence; request medical documentation") for 0.6 hours.

The two problems intersect. Because many entries are vague, assessing whether they are excessive is difficult. But, the presence of at least some excessive entries suggests that some of the vague entries are also excessive. An estimate for these types of reductions is $4,000.00.

4. Attorney Involvement with Expert Reports

As noted in the procedural history, Mr. Milmoe and Ms. Durant spent about 15 hours assisting in the preparation of Dr. Simpson's and Dr. Simon's initial reports. See entries from Sep. 17, 2021 to Oct. 8, 2021. Attorneys spent another 10 hours for the reply reports. See entries from May 20, 2022 to August 8, 2022.

Exactly what the attorneys were doing is a little difficult to understand. For example, Mr. Milmoe's Aug. 23, 2021 entry charges 2.5 hours for "Confer with medical expert (Dr. Simon); review and analyze facts; review expert report; provide detailed feedback." It is important to note that none of the attorneys' entries suggest that the attorney was writing the expert report. Cf. Pisani v. Sec'y of Health & Human Servs., No. 20-1249V, 2025 WL 4711747, at *11 (Fed. Cl. Spec. Mstr. May 7, 2026) (reducing the hourly rate for an attorney who largely drafted an expert's report); Slusser v. Sec'y of Health & Human Servs., No. 21-1636V, 2026 WL 212365, at *8-9 (Fed. Cl. Spec. Mstr. June 26, 2026) (reducing the hourly rate for an attorney who largely drafted an expert's report). Nevertheless, the amount of time the attorneys spent at least leads to some questions as to the independence of Dr. Simpson and Dr. Simon.

Moreover, it is not readily apparent that that the attorneys were using *legal*, as opposed to *medical*, background. Attorneys who command relatively high rates are compensated for their experience as attorneys, making legal arguments. Attorneys do not practice medicine. Thus, charging relatively high hourly rates for work more properly done by people who have attended medical school may result in inefficiencies. Thus, approximately half the value of the work for which the attorneys have charged ($5,000) is deducted.

5. Obtaining Additional Medical Records

After the case was submitted for a potential adjudication by Mr. Demore's filing a reply on April 17, 2024, paralegals continued to seek medical records. See entries from May 13, 2024 to August 1, 2024. The time spent on these tasks was relatively small, approximately three hours of paralegal time, valued at about $600.00.

The Secretary objected to these tasks. Mr. Demore's answer has some value. Mr. Demore describes "requesting updated medical records" as "an ongoing responsibility of counsel prior to entry of judgment." It is fair to say that updated medical records should be requested periodically. But, the point is incomplete. To the extent that a petitioner obtains information, the petitioner has a burden to disclose that information by filing the material as an exhibit. It hardly advances petitioner's argument to say petitioner's obligation is fulfilled by *requesting* information. The argument regarding the reasonableness of these activities would carry more force if attorneys and paralegals at Ms. Durant's law firm had *submitted* the medical records as exhibits.

In any event, the charges associated with these requests suffer from being excessive in that the paralegal has invoiced for 0.5 hours for each medical provider. Thus, these entries are reduced with other vague and/or excessive entries set out in paragraph 3 above.

6. Motion for Reconsideration

Mr. Milmoe drafted a motion for reconsideration of the order denying the third motion for enlargement of time and charged 6.5 hours. Entry for Dec. 14, 2023. The motion itself is approximately three double-spaced pages. It is difficult to see how an attorney can spend most of a standard (eight-hour) workday to produce a motion that short and that cites no cases. Moreover, the need for the motion for reconsideration was due to counsel's failure to manage deadlines properly. The Government should not have to pay for work caused by counsel's mistakes. Paul v. United States, 21 Cl. Ct. 415, 429 (1990), aff'd, 937 F.2d 623 (Fed. Cir. 1991). This charge ($3,594.50) is not allowed entirely.

7. Motion for Review

As set out in section II above, the filing of the motion for review was supported by reasonable basis. But, this finding does not necessarily mandate that all time associated with the motion for review was reasonable.

Preparing the motion for review appears to have taken approximately 14 hours. Entries for Oct. 7, 2024 (3.5 hours) and Oct. 7, 2028 (10.5 hours). Again, the time entries would have been enhanced if Mr. Milmoe had refined them. See Ennis v. Sec'y of Health & Human Servs., No. 16-1148V, 2025 WL 2239245, at *3 (Fed. Cl. Spec. Mstr. July 15, 2025) (subsequent history on unrelated issues omitted).

The motion for review contains one primary argument and two secondary arguments. The primary argument concerns biologic plausibility. As discussed above, although the Court described this argument as an "obfuscation," 175 Fed. Cl. at 761, one other judge did find that argument persuasive. Thus, the undersigned finds this argument to be reasonable, if flawed.

On the other hand, the two other arguments seem to have almost no merit. The second argument is that the special master failed to consider the record as a whole. Pet'r's Mem., filed Oct. 28, 2024, at 16-18. Under this heading, petitioner discusses the third Althen prong and the second Althen prong. But, petitioner does not identify any evidence that was supposedly overlooked. Later, in a different part of the brief, Mr. Demore states that the special master failed to consider that he received a high-dose of the flu vaccine. Yet, with appropriate candor, Mr. Demore also concedes that "the experts did not address the significance of the high dose vaccine in their reports." Id. at 20. Under these circumstances, an error seems difficult to demonstrate. See Vaccine Rule 8(f)(1) ("Any fact or argument not raised specifically in the record before the special master will be considered waived").

The third argument in the motion for review is that the special master abused his discretion in declining to hold a hearing. Pet'r's Mem. at 19-20. But, the standard of review is very high and petitioner had little chance of prevailing upon this issue. See Opinion, 175 Fed. Cl. at 754, quoting Kreizenbeck v. Sec'y of Health & Human Servs., 945 F.3d 1362, 1365 (Fed.

Cir. 2020) ("[s]pecial masters have wide discretion in determining whether to conduct an evidentiary hearing").

After Mr. Demore filed the motion for review, Mr. Milmoe spent 2.5 hours reviewing the Secretary's response. Entry for Nov. 25, 2024. The Secretary's brief in opposition to the motion for review is 20 double-spaced pages (not counting pages for various tables). It is difficult to understand how an experienced attorney, like Mr. Milmoe, can spend essentially the better portion of a workday morning reading one brief. This bafflement is deepened because Mr. Demore did not file a reply to the Secretary's brief.

Furthermore, Mr. Milmoe spent 1.5 hours reading the Opinion denying the motion for review. Entry for Feb. 26, 2025. This opinion is ten single-spaced pages. Again, 90 minutes to read 10 pages seems excessive. However, this is less a concern because (a) the amount of time is less and (b) the Court's Opinion could at least in theory be the basis for an appeal to the Federal Circuit.

Overall, six hours of Mr. Milmoe's time on the motion for review will be removed. This is a deduction of $3,762.00.

8. Application for Attorneys' Fees

Finally, Ms. Durant spent 3.5 hours on the task of preparing the motion for attorneys' fees. Specifically, Ms. Durant has charged for "review, compile, and calculate litigation expenses" as well as "exercise billing judgment." Entry for Aug. 15, 2025. However, evidence that Ms. Durant exercised billing judgment is not readily apparent as discussed in the preceding paragraphs and below. Thus, this charge ($1,855.00) is eliminated.

9. Summary

A reasonable amount of attorneys' fees is $83,711.50.

| | |
|---|---|
| Amount Requested Originally | $105,623.00 |
| Reduction for Attorney Charging for Paralegal Work | $3,200.00 |
| Reduction for Clerical Activities | $500.00 |
| Redution for Vague / Excessive Activities | $4,000.00 |
| Reduction for Attorney Work in Expert Reports | $5,000.00 |
| Reduction for Motion for Reconsideration | $3,594.50 |
| Reduction for Motion for Review | $3,762.00 |
| Reduction for Preparing Fee Application | $1,855.00 |
| TOTAL | $83,711.50 |

### C. Attorneys' Costs

For attorneys' costs, Mr. Demore has requested $29,799.62. Exhibit 55. Many of these items concern routine expenses, such as the cost for obtaining medical records, the filing fee, and mailing. These are accepted. Other items merit additional discussion.

Expert Institute. Mr. Demore requests reimbursement of $2,000.00 for the retention of Dr. Simon and reimbursement of another $2,000.00 for the retention of Dr. Simpson. Pet'r's Mot. at pdf 16-17. Mr. Demore explained that her case was "the first case in which petitioner's law firm retained Dr. David Simpson and Dr. Ronald Simon." Pet'r's Status Rep., filed Sep. 30, 2026, at 2. This representation is credited and the amounts requested are reasonable.[4]

Dr. Simpson's Charges. Dr. Simpson submitted six invoices in which he requested compensation for 24 hours of work at a rate of $700.00 per hour. Exhibit 55 at pdf 18-21, 23-24. The total request is $16,800.00.

Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013). To determine the reasonableness of an expert's proposed rate, special masters may consider the "area of expertise; the education and training required to provide necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; [and] the cost of living in the expert's geographic area." Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 206 (2009). Furthermore, "[p]etitioner has the burden of providing the foregoing information concerning expert fees." Id. Experts are expected to list the amount of time they spent on particular activities. See Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 781-83 (2013); Morse v. Sec'y of Health & Human Servs., 89 Fed. Cl. 683 (2009).

With respect to Dr. Simpson's proposed hourly rate of $700.00 per hour, Mr. Demore presented no justification. Other than submitting Dr. Simpson's curriculum vitae, Mr. Demore did not support the proposed request in his motion. For example, Mr. Demore did not cite any cases discussing Dr. Simpson's proposed hourly rate. This omission is surprising in the sense that Mr. Demore recognized that this was the first case in which Ms. Durant's law firm retained Dr. Simpson.

Special masters have compensated Dr. Simpson at an hourly rate lower than $700.00 per hour. See, e.g., Brancheau v. Sec'y of Health & Human Servs., No. 21-1209V, 2024 WL 4930700, at *3 (Fed. Cl. Spec. Mstr. Nov. 5, 2024) (awarding $500.00 per hour). Simply to retain comity, the undersigned accepts $500.00 as a reasonable hourly rate.

With respect to the number of hours, Dr. Simpson's invoices leave much to be desired. For example, Dr. Simpson generally omitted the date he performed various tasks. The February 3, 2021 Instructions provided guidance to petitioner's experts that they should differentiate their

[4] Given the fact that Ms. Durant's law firm is now acquainted with Dr. Simpson and Dr. Simon, the undersigned would not expect similar charges from an expert search firm in other cases with Ms. Durant's law firm and Dr. Simpson or Dr. Simon.

tasks approximately every 30 minutes. Dr. Simpson's invoice would have communicated more information if Dr. Simpson had complied with this instruction.

Overall, a few entries lack sufficient detail that they can be credited. For example, it appears that Dr. Simpson has twice invoiced 3.0 hours for writing the report filed on August 8, 2022. Dr. Simpson's final two invoices sought compensation for work that seems unnecessary. Although the number of hours requested is relatively small (0.75), they cannot be credited.

Accordingly, a reasonable number of hours for Dr. Simpson's work is 20.25. A reasonable hourly rate is $500.00 per hour. Thus, a reasonable amount of compensation for Dr. Simpson's work is $10,125.00. This results in a deduction of $6,675.00.

Dr. Simon's Charges. Mr. Demore presented one invoice from Dr. Simon. Exhibit 55 at 22. Dr. Simon requested compensation for 10 hours of work at a rate of $375.00 per hour.

Again, Mr. Demore did not justify the proposed hourly rate for Dr. Simon. Independent research did not identify any decisions in which special masters evaluated Dr. Simon's hourly rate. However, special masters have awarded immunologists $400.00 per hour. See Jinkerson v. Sec'y of Health & Human Servs., No. 18-1355V, 2024 WL 3760329, at *4 (Fed. Cl. Spec. Mstr. July 11, 2024). Thus, the amount proposed for Dr. Simon ($375.00) is accepted.

For the number of hours, Dr. Simon, too, could improve his invoices by adding more details. However, there is sufficient information to credit the 10 hours he requested. Accordingly, there is no deduction for Dr. Simon's work.

| | |
|---|---|
| Revised Request for Costs | $29,799.62 |
| Deduction for Dr. Simpson | $6,675.00 |
| Costs Awarded | $23,124.62 |

### D. Summary

A reasonable amount of attorneys' fees is $83,711.50 and a reasonable amount of attorneys' costs is $23,124.62.

## IV. Conclusion

The following is ordered:

1. Petitioner is awarded $106,836.12, which shall be paid through an ACH deposit to Ms. Durant's IOLTA account for prompt disbursement. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

2. To discuss this decision, a status conference is scheduled, sua sponte, for **Wednesday, December 2, 2026 at 10:00 A.M.** Both Ms. Durant and Mr. Milmoe are expected to attend.

IT IS SO ORDERED.

s/Christian J. Moran
Christian J. Moran
Special Master